David Isidor PORT, Appellant,

v.

The STATE of Texas, Appellee.

No. 3–85–191–CR.

Court of Appeals of Texas,
Austin.

Oct. 10, 1990.

Rehearing Overruled Dec. 19, 1990.

Jack B. Zimmerman, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Timothy G. Taft, Asst. Dist. Atty., Houston, for appellee.

* Before Earl W. Smith, Justice (Retired) Third Court of Appeals, sitting by assignment. *See*

Before GAMMAGE, ABOUSSIE and SMITH *, JJ.

ABOUSSIE, Justice.

On first submission, we reversed the trial court's judgment in which the appellant, David Isidor Port, was convicted of murdering Debra Schatz, a postal carrier. *Port v. State*, 736 S.W.2d 865 (Tex.App. 1987). We reversed the conviction on the ground that the appellant's unrecorded oral admission of guilt was not admissible under Tex.Code Cr.P.Ann. art. 38.22 (1977 and Supp.1987). On the State's motion to reconsider, filed concurrently with its petition for discretionary review, we modified our original opinion in light of *Briddle v. State*, 742 S.W.2d 379 (Tex.Cr.App.1987), cert. denied, 488 U.S. 986, 109 S.Ct. 543, 102 L.Ed.2d 573 (1988), but did not alter our judgment. *Port v. State*, 738 S.W.2d 787 (Tex.App.1987). The Court of Criminal Appeals granted the State's petition for discretionary review, found that the oral statements of the appellant were admissible under art. 38.22, section 3(c), reversed our judgment (both on original submission and on reconsideration), and remanded the cause to us for disposition of points of error unanswered on original submission. *Port v. State*, 791 S.W.2d 103 (Tex.Cr.App. 1990). We will affirm the trial court's judgment.

## WAIVER OF RIGHTS

In his first point of error, appellant asserts that the trial court erred in failing to grant the appellant's motion to suppress his oral statement because it was involuntary as a matter of law, in that he did not waive his right against self-incrimination or his right to assistance of counsel prior to his custodial interrogation. Because we originally sustained appellant's second point of error, we did not reach the issue of waiver. Since the Court of Criminal Appeals, on petition for discretionary review, can only review those points addressed in

Tex. Gov't Code Ann. § 74.003 (1988).

the opinion before them, they, too, did not reach this question. Consequently, appellant's oral statements are admissible under section 3(c), only if it is determined they were obtained in conformity with constitutional requirements. We turn to that inquiry now.

Our original holding that the appellant's oral statement was one continuous confession given in response to custodial interrogation remains undisturbed. Under such circumstances, the burden is upon the State to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. *Miranda v. Arizona*, 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694 (1966). Otherwise, no evidence obtained as a result of interrogation can be used against him. *Id.* at 479, 86 S.Ct. at 1630; *Dunn v. State*, 696 S.W.2d 561, 567–69 (Tex.Cr.App.1985), cert. denied, 475 U.S. 1089, 106 S.Ct. 1478, 89 L.Ed.2d 732 (1986).

■ Waiver is the intentional relinquishment or abandonment of a known right or privilege. *Janecka v. State*, 739 S.W.2d 813, 829 (Tex.Cr.App.1987). A waiver of *Miranda* rights need not be explicit but may be inferred from the actions and words of a person interrogated. *Tague v. Louisiana*, 444 U.S. 469, 471, 100 S.Ct. 652, 653, 62 L.Ed.2d 622 (1980); *Castillo v. State*, 616 S.W.2d 620, 622 (Tex.Cr.App. 1981). The question of waiver must be determined on the particular facts and circumstances surrounding the case, including the background, experience and conduct of the accused. *North Carolina v. Butler*, 441 U.S. 369, 374–75, 99 S.Ct. 1755, 1758, 60 L.Ed.2d 286 (1979); *Dunn v. State*, 696 S.W.2d at 568. Finally, the voluntariness of a consent or an admission on the one hand, and a knowing and intelligent waiver on the other, are discrete inquiries. *Edwards v. Arizona*, 451 U.S. 477, 484, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981); *Dunn*, 696 S.W.2d at 568.

■ As a preliminary matter, the State argues that evidence presented in the punishment stage of the trial may not be considered in reviewing whether the appellant made a voluntary waiver of his rights. We disagree. It is a well-established principle that all facts and circumstances bearing on the issue are properly the subject of scrutiny and, therefore, the entire record is subject to review. *Clewis v. Texas*, 386 U.S. 707, 708, 87 S.Ct. 1338, 1339, 18 L.Ed.2d 423 (1967); *Dunn*, 696 S.W.2d at 568–69; *Barton v. State*, 605 S.W.2d 605, 607 (Tex. Cr.App.1980).

The trial judge is the trier of fact at a hearing on the voluntariness of a confession. He is the exclusive judge of the credibility of the witnesses as well as the weight to be afforded their testimony. Our review of the trial court's determination is limited to whether an abuse of discretion occurred. *Sosa v. State*, 769 S.W.2d 909, 915 (Tex.Cr.App.1989); *Barton*, 605 S.W.2d at 607. We now examine the record.

## A. Circumstances Surrounding Arrest

■ At approximately 2:00 p.m. on June 8, 1984, the appellant was arrested after a high speed automobile chase that ended when he crashed into a parked car in an apartment complex parking lot. The police officers and postal inspectors present on the scene drew their weapons and ordered appellant out of his car. Upon determining the appellant was unarmed, the officers and postal inspectors holstered their weapons. The appellant was handcuffed and placed in the custody of Houston police officers Sauceda, Waltmon and Harris. He was then placed in the back seat of Officer Sauceda's police car, where Officer Harris read appellant his *Miranda* warnings. The appellant was asked if he understood each warning after it was read to him. To each such query, appellant replied in the affirmative. After reading all of the warnings, Officer Harris asked the appellant if he understood everything he had been told, to which the appellant replied: "Yeah, I guess so." Whereupon, Officer Waltmon addressed the appellant: "It's not either: Yeah, you guess so; it's either you understand or you don't." The appellant then responded: "Yeah, I understand."

Officer Waltmon then asked appellant whether he had killed the female postal carrier to which Port responded, "Yeah, I shot her." The defendant continued either to respond to police questions or to volunteer information about the murder until late that afternoon when his attorney arrived at the police station and stopped the taking of appellant's written statement.

### B. Circumstances Surrounding Oral Statements

Upon having each of his *Miranda* warnings read to him, appellant did not ask any questions or request that anything be repeated or explained, and he did not request an attorney or indicate he did not wish to speak. He did not remain silent. In fact, he responded immediately and freely to the officer's first question and admitted killing the postal carrier.

En route to a bayou where the appellant said he had disposed of the victim's body, he continued to respond to questions and to volunteer information without a predicate question. Later, en route to the police station, the appellant spontaneously volunteered additional information to Officer Sauceda about events in his home leading up to and including the shooting of the postal carrier. Officer Sauceda then asked the appellant additional questions, all of which he answered. During the course of appellant's statements, Officer Saucedo testified, "I told him that he didn't have to be telling me all these things, and he said, 'I know'."

Between 3:00 and 3:30 p.m., Officer Sauceda arrived at the police station and delivered appellant into the custody of detectives. Appellant was then taken before an associate municipal judge, acting as a magistrate, who gave the appellant statu-

tory warnings pursuant to Tex.Code Cr.P. Ann. art. 15.17 (Vernon 1977 & Supp. 1986).[1] The detectives then took appellant to an interview room and asked if he would be willing to tell them what happened, which he said he would do.

The record indicates that during the course of his interview with detectives appellant received his legal warnings a third time from Detective Yanchak; was asked if he would waive the magistrate warnings, which he did; orally gave a statement; consented to give a written statement; and was again read his warnings from a blue form entitled: "A Statement of a Person in Custody Form." When appellant's attorney arrived at the police station, he terminated the taking of appellant's written statement.

The arresting officers testified that the appellant appeared to be very calm, unemotional and unexcited. He did not appear upset, intoxicated, injured, in pain or in physical discomfort. He exhibited no difficulty in getting into the police vehicle or in understanding and following commands.

### C. Holding

*Miranda* recognizes an accused's right to choose between speech and silence. *Connecticut v. Barrett*, 479 U.S. 523, 529, 107 S.Ct. 828, 832, 93 L.Ed.2d 920 (1987). We hold that the appellant chose to speak and voluntarily waived his right to remain silent or to confer with his attorney from the moment he answered Officer Waltmon's first question in the squad car until the point in time when his attorney arrived at the police station and terminated appellant's interrogation. At no point during the custodial interrogation did the appellant refuse to answer or delay answering questions.[2] The appellant was repeatedly

---

1. Article 15.17 warnings are the statutory equivalent of *Miranda* warnings.

2. For this reason, appellant's reliance on *Watson v. State*, 762 S.W.2d 591 (Tex.Cr.App.1988) is misplaced. In that case, the defendant sat silently during a thirty to forty-five minute custodial interrogation. He never expressly requested an attorney or indicated he wished to remain silent. During his fourth interrogation, he made an oral statement. The Court of Crimi-

nal Appeals held that his refusal to answer questions during his first and second interrogations and part of the third were sufficient conduct to demonstrate his desire to remain silent. *Id.* at 599. Here, the appellant immediately and without hesitation responded to police questions.

For similar reasons, appellant's reliance on the following cases is distinguished: *Ochoa v. State*, 573 S.W.2d 796 (Tex.Cr.App.1978) (after receiving warnings, defendant told officer he

warned of his rights, and in every instance agreed to answer questions. There is no evidence that the police employed coercion, force, threats, promises, or physical intimidation to coerce or coax appellant to give a statement in spite of a desire to remain silent.

We must consider any factors that may bear on the appellant's capacity to waive his rights knowingly and intelligently. The record indicates that at the time of his arrest, appellant was seventeen years old. His brother characterized him as a slow learner, but his brother's testimony also indicates that after attending a private school where individualized instruction was available, the appellant progressed rapidly and returned to the public school system. Appellant was a satisfactory high school student at the time he committed the murder.

The record also indicates the appellant is a diabetic who takes insulin injections on a daily basis. During custodial interrogation, the appellant was asked if he had received or needed his insulin. He indicated he had taken his insulin that day and he was okay. At no time did the appellant exhibit behavior that would suggest he was ill, incapacitated, intoxicated or that his mental capacity and judgment were impaired.

Testimony of several witnesses repeatedly referred to the fact that the appellant appeared cool and calm. The magistrate found him to be remarkably so. He was at all times cooperative and on at least one occasion indicated that he knew he did not have to be giving the police his oral statements. At no time was appellant prevented from seeing an attorney, or sequestered from anyone wishing or requesting to see him. *See Dunn,* 696 S.W.2d at 569.

We hold that the appellant's voluntary waiver was made knowingly and intelligently. We find no abuse of discretion on the part of the trial court in its ruling that the appellant's oral statements were admissible. Appellant's first point of error is overruled.

### VENIRE AND JURY SELECTION

By his fourth point of error, appellant alleges that the trial court committed reversible error by requiring him to exercise a peremptory challenge to a venire member. Appellant advances two distinct bases in support of this point. We address first appellant's allegation that he was denied the opportunity to pose questions on the presumption of innocence to prospective juror Setser.

■ The law is well-settled that the record of the entire voir dire is necessary to decide issues regarding denial of questions sought to be posed to prospective jurors. *Payton v. State,* 572 S.W.2d 677, 680 (Tex.Cr.App.1978). Appellant brought forward only that portion of the record containing the questions propounded to Setser on individual voir dire examination.[3] Appellant has failed to preserve this argument for review.

■ Appellant also alleges that the trial court erred in failing to grant his challenge for cause to venire member Setser. When the issue concerns denial of a challenge for cause, only the examination of the individual venire member need be in the record. *Payton,* 572 S.W.2d at 680. Additionally, appellant properly preserved error when his challenge to Setser was denied.[4]

thought he should talk to an attorney before answering any questions or signing anything); *Faulder v. State,* 611 S.W.2d 630 (Tex.Cr.App. 1979), cert. denied, 449 U.S. 874, 101 S.Ct. 215, 66 L.Ed.2d 95 (1980) (after receiving warnings, defendant voiced request to remain silent); *Castillo v. State,* 616 S.W.2d 620, 621 (Tex.Cr.App. 1981) (after receiving warnings from magistrate, defendant requested counsel).

3. Appellant submitted a Motion to Supplement the Record with the transcript of the questions propounded during the voir dire of the jury

panel as a group on the last day of voir dire examination. However, such supplementation, if granted, still would not include the entire record of the voir dire. Appellant's motion was overruled.

4. In order to preserve error once his challenge for cause was overruled, appellant was required to demonstrate: (1) use of a peremptory challenge to strike Setser; (2) exhaustion of his remaining peremptory challenges; (3) the request for an additional peremptory challenge, which was overruled; and (4) the seating of a

■ Appellant challenged Setser on the grounds that he had a bias or prejudice against the defendant, had formed a conclusion as to the guilt or innocence of the defendant, and was biased against the law applicable to the case upon which the defense is entitled to rely. Tex.Code Cr.P. Ann. art. 35.16(a)(9), (10) and (c)(2) (1989). The trial court's decision to overrule a challenge for cause must be reviewed in light of all the answers that the prospective juror gave during voir dire questioning. *Anderson v. State,* 633 S.W.2d 851, 854 (Tex.Cr.App.1982). We examine the record of Setser's voir dire examination for evidence of bias or prejudice against the defendant or against the law applicable to the case upon which the defense was entitled to rely, or of a conclusion by Setser as to appellant's guilt.

■ The record shows that Setser made the statement that he believed "the law enforcement is right 90 percent of the time." Defense counsel then asked, "So, you would, then, want us to prove something to show you that the police maybe were wrong in this case?" Setser responded, "Yes, sir." Setser also admitted that he had heard and read news accounts of the case and discussed the murder with his family. He disclosed he was aware that the victim's father had suffered a fatal heart attack after the murder and that the appellant's parents refused to testify before the grand jury.

Setser also stated during voir dire examination that: (1) he had formed no conclusion as to the guilt or innocence of the defendant; (2) he could set aside whatever he might have heard, read or seen and base his verdict entirely upon the evidence presented in the courtroom; (3) he thought he could be fair and just; and (4) he understood that the defense is never required to prove or disprove anything. Setser modified his statements concerning police officers to indicate that he would put police testimony through the same test for credibility that he would any other testimony.

He said that he would not believe a police officer just because he is a police officer.

The trial court is granted wide discretion in determining whether bias or prejudice exists. *Anderson v. State,* 633 S.W.2d at 854. In light of the totality of Setser's answers during his voir dire examination, we hold the trial court did not abuse its discretion in overruling appellant's challenge for cause.

■ By his eighth point of error, appellant contends that the trial court committed reversible error by failing to grant his motion to quash the venire because the procedure used to choose the venire violated Tex.Code Cr.P.Ann. art 33.02 (1989). Article 33.02 provides that the failure to register to vote shall not disqualify any person from jury service.

At the time of trial, selection of names for the jury wheel was governed by 1979 Tex.Gen.Laws, ch. 131, § 2 at 253 [Tex. Rev.Civ.Stat. art. 2094, now Tex. Gov't Code Ann. § 62.001 (Supp.1990)], which read:

> Between the first and fifteenth days of August of each year, in each county in this State, the tax collector, sheriff, county clerk, and district clerk of the county, each in person or represented by one of his deputies, shall meet at the county courthouse and reconstitute the jury wheel, using as the sole and mandatory source, all names on the voter registration lists from all precincts in the county and the register of permanently exempt persons maintained by the tax collector under Article 2137(a).

The record discloses that the court administrator in Comal County used the voter registration lists from all the precincts in that county to obtain the pool of names for potential jurors. This procedure comports with that mandated by former article 2094. It is true that only the names of individuals who register to vote would appear on the voter registration lists used by the court. The venire that *results* from using the

juror upon whom appellant would have exercised a peremptory challenge. *Payton v. State,*

572 S.W.2d 677, 680 (Tex.Cr.App.1978).

procedure mandated by former article 2094 may be indistinguishable from that which results when members are excluded from jury service because of a failure to register to vote. However, the courts have declined to find such a result, alone, reversible error. *See Robbins v. State*, 667 S.W.2d 318, 323 (Tex.App.1984, rev'd on other grounds, 717 S.W.2d 348 (Tex.Cr.App.1986). More importantly, the record does not indicate that any venire member was *disqualified* from jury service because of a failure to register to vote. Appellant's eighth point of error is overruled.

### OTHER POINTS

By his sixth point of error, the appellant challenges the authority of the trial judge to preside over his trial in the third administrative judicial district. Appellant's argument is bottomed on the requirements of former revised statutes article 200a, § 5a. 1985 Tex.Gen.Laws, ch. 602, § 18, at 2268 [now Tex. Gov't Code Ann. § 74.054 (Supp. 1990)]. Appellant argues that the district judge of Harris County who presided over his trial in Comal County on a change of venue order was subject to former article 200a, § 5a. Appellant asserts that this provision required that the trial judge be administratively assigned by the presiding judge of the second administrative district, in which Harris County is located, to the Comal County district court, located in the third administrative district.

 Because appellant raises this objection for the first time on appeal, it is waived, and we presume that the judge acted in the regular discharge of his duties. *Woods v. State*, 569 S.W.2d 901, 903 (Tex. Cr.App.1978), cert. denied, 453 U.S. 913, 101 S.Ct. 3145, 69 L.Ed.2d 995 (1981); *Floyd v. State*, 488 S.W.2d 830, 832 (Tex. Cr.App.1972). Furthermore, in a criminal prosecution, the failure of the trial judge to obtain formal assignment to a judicial district following change of venue is not a jurisdictional error and does not render the trial judge without authority to preside at trial. *Ex Parte Loffland*, 670 S.W.2d 390, 394 (Tex.App.1984, pet. ref'd.).

In his seventh point of error, appellant asserts that the trial court committed reversible error by denying the appellant's motion for mistrial based upon manifestly improper jury argument by the state at the punishment stage of the trial. The prosecutor argued: "I would like you to compare the photographs of Debora Sue Schatz, with her arms stretched out in death, bitten by ants and her Timex watch stopped, with the photographs introduced in evidence of supposed handcuff marks on his [the appellant's] Rolex clad wrist." Defense counsel's immediate objection that the remark was an inflammatory and prejudicial appeal to economic or class prejudice was sustained, and the court instructed the jury to disregard the comment. Defense counsel then moved for a mistrial, which was overruled.

 An instruction to disregard will cure error except in extreme cases when it appears the argument was clearly calculated to inflame the minds of the jury and was of such character to suggest the impossibility of withdrawing the impression produced on their minds. *Edmiston v. State*, 520 S.W.2d 386, 387 (Tex.Cr.App.1975). To the extent that the prosecutor's remarks may have been improper, we find the instruction to disregard adequate to cure any error and withdraw any impression that may have been produced in the jurors' minds. Appellant's point is overruled.

Appellant next attacks the trial court's denial of his motion for leave to file a first amended motion for new trial and motion in arrest of judgment. Appellant, by his own admission, filed these motions fifty-nine days after sentencing, long after the thirty-day deadline for filing. 1981 Tex. Gen.Laws, ch. 291, §§ 107, 110, at 803 and 808 [Tex.Code Cr.P. art. 40.05(a) and 41.-02(a) since repealed, now Tex.R.App.P.Ann. 31, 34 (Supp.1990)].

 The applicable rules make no provision for the late filing or amendment of a motion for new trial or motion in arrest of judgment, even with leave of court. *Drew v. State*, 743 S.W.2d 207, 222 (Tex.Cr.App.1987). The right to move for new trial or to amend a motion for new

trial is purely statutory. The remedy must be pursued in the manner prescribed by the statute. The statutory provisions are mandatory and exclusive and must be complied with in all respects, and the court in exercising its particular authority is a court of limited jurisdiction. When there is no jurisdiction, the power of the court to act is as absent as if it did not exist. *Id.* at 223. These principles apply with equal force to appellant's motion in arrest of judgment.

■ Nevertheless, appellant argues he comes within the exception set forth in *Whitmore v. State,* 570 S.W.2d 889 (Tex. Cr.App.1976). Generally, *Whitmore* stands for the proposition that an untimely motion for new trial may be considered when an accused's fundamental constitutional right is in conflict with a valid procedural rule. We note that in that instance the defendant must show good cause for his late filing. *Id.* at 898–99. Even then, in order to find an abuse of discretion on the part of the trial court in overruling a motion for new trial based on newly discovered evidence, the record must reflect that: (1) the newly discovered evidence was unknown to the movant at the time of trial; (2) the movant's failure to discover the evidence was not due to his want of diligence; (3) the materiality of the evidence is such as would probably bring about a different result on another trial; and (4) the evidence is admissible and is not merely cumulative, corroborative, collateral, or impeaching. *Id.* at 895–96.

■ The fundamental constitutional right appellant advances is his right to be tried before a constitutionally qualified district judge. Specifically, appellant asserts that the trial judge did not satisfy the constitutional residency requirements for his office.[5] Appellant cites no authority in support of his argument that appellant has a fundamental constitutional right, personal to him, to be tried before a constitutionally qualified district judge. Even if such a right is assumed to exist, appellant cannot demonstrate that evidence of the judge's alleged non-compliance with the residency requirement was unavailable at the time of trial. This Court is of the opinion that with due diligence, appellant could have presented his residency challenge at or before trial. We also find that the alleged new evidence probably would not bring about a different result on a new trial.[6] Finally, the evidence is merely collateral. Appellant's ninth point is overruled.

Appellant also raises the judicial residency requirement as the basis for his eleventh point of error, in which he asserts he was denied his right to due process under the United States Constitution and due course of law under Tex. Const.Ann. art. I, § 19 (1984) because his trial was conducted by a person not qualified to be a district judge. The contention is raised for the first time on appeal. Appellant failed to preserve error on this point and nothing is presented for review.

■ Finally, appellant argues that the court committed reversible error when it refused to allow him to make a record of the evidence he would have introduced at the hearing on his motion for leave to file first amended motion for new trial. A court should refuse to hear a motion that is not timely filed. *Whitmore v. State,* 570 S.W.2d 889, 898 (Tex.Cr.App.1977). Under the circumstances, even if a record of the hearing had been made, this Court need not and would not consider it. *Reynolds v. State,* 548 S.W.2d 733, 734 (Tex.Cr.App. 1977); *Farris v. State,* 514 S.W.2d 946

**5.** In order to be eligible for election as a judge, article V, section 7 of the Texas Constitution requires that a person reside in the district in which he was elected for two (2) years preceding his election and reside in his district during his term of office. Tex.Const.Ann. art. V, § 7 (Supp.1990)

**6.** As evidence of his allegation, appellant attached to his first amended motion for new trial a petition for leave to file information in quo warranto, filed by the Harris County district attorney in another cause; an order granting the petition for leave to file the petition and information in quo warranto, accompanied by the district attorney's affidavit swearing to the truth of the petition; a warranty deed; and the affidavit of an investigator employed by the appellant's counsel reciting the warranty deed was obtained from the county clerk in Galveston County where it had been filed in 1982.

(Tex.Cr.App.1974). Consequently, the trial court's refusal in allowing the appellant to make such a record is not error.[7] Appellant's tenth point of error is overruled.

Points two, three and five have been disposed of by the prior decisions in this case.

The judgment of the trial court is affirmed.

---

7. Appellant cites *Spence v. State,* 758 S.W.2d 597, 599 (Tex.Cr.App.1988) for the proposition that the right to make an offer of proof or perfect a bill of exception is absolute. Spence was refused the right to do either during a hearing on a pretrial motion to dismiss the indictment. We note that in *Spence,* the court had jurisdiction to hear the matter before it. Here the trial court lacked jurisdiction to hear appellant's motion and, therefore, no absolute right to make an offer of proof or bill of exception existed.