# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00279-CR

**Martin Arce Calderon, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT NO. D-1-DC-06-100089, HONORABLE CHARLES F. BAIRD, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

A jury convicted Martin Arce Calderon of aggravated assault causing serious bodily injury. *See* Tex. Penal Code Ann. § 22.02 (West Supp. 2008). The district court sentenced him to four years in prison. Calderon argues that the district court erred in admitting portions of statements he made to sheriff's officers while in custody, and in suppressing statements made by other individuals involved in the incident at issue. We hold that admission of Calderon's statements was not error because he had made a knowing, intelligent, and voluntary waiver of his rights, and that suppression of the other individuals' statements was not constitutional error. We affirm the judgment of conviction.

*Factual and Procedural Background*

Late at night on August 7, 2005, eighteen-year-old Martha Dominguez and some friends drove to a club in south Travis County. After a fight broke out in the club, security guards

made Dominguez's group leave, based on the belief that one of Dominguez's male friends had been involved in the fight. Dominguez and her friends drove away from the club in their SUV, in which Dominguez was seated in the center of the front seat.

Calderon and his friends were also involved in the fight at the club. They left the club at the same time as the Dominguez group. While driving away from the club in a white Lincoln Town Car driven by Calderon, they pulled alongside the driver's side of the Dominguez group's SUV. Daniel Fernandez, seated beside the right door on the Town Car's back seat, fired a .38 caliber revolver two or three times at the SUV. The final bullet hit the front windshield of the SUV and struck Dominguez in the face, causing her to lose her left eye and damaging her right eye.

Based on descriptions of the Town Car provided by the club's security guards and the Dominguez group, police officers located the car driving in north Austin the following evening. The officers initiated a traffic stop and detained the individuals in the car, some of whom had been in the car during the events of the previous evening, including the driver Calderon and the shooter Fernandez. The occupants of the Town Car were taken to the Travis County Sheriff's Office in downtown Austin. Sergeant Stan Roper transported Calderon there individually. Roper did not interview Calderon at this point, but asked him if he would be willing to talk about the incident.

After arriving at the station, Detective William Poole interviewed Calderon in Spanish. Detective Chris Rowland was also present during the interview as lead detective in the case, although he was not the interviewer, due to his not being a Spanish speaker. During the course of the interview, Calderon stated that he had placed the gun under his car seat and that, immediately prior to the shooting, he pulled the gun out from under the seat and handed it to Fernandez in the

back seat. According to Poole's testimony at trial, in making these statements Calderon nonverbally indicated that he had passed the gun back over his right shoulder.

Calderon was charged by indictment with aggravated assault causing serious bodily injury and using a deadly weapon, a second degree felony. *See id.* On April 8, 2008, a jury found Calderon guilty of the offense charged, and the district court assessed his punishment at four years in the Institutional Division of the Texas Department of Criminal Justice. Calderon appeals.

### *Admission of Portions of Calderon's Statements*

In four points on appeal, Calderon argues that the trial court erred in admitting portions of statements he made during his interview by Detectives Poole and Rowland. The district court found that Calderon was in custody when his statements were made and that he did not knowingly, intelligently, and voluntarily waive his *Miranda* rights prior to making his statements. As a result, the court determined that Calderon's statements made during the interview were generally not admissible. *See Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966). However, the district court then determined that, despite its findings of custody and no waiver of rights, those portions of Calderon's statements that were assertions of fact that "conduce to establish [his] guilt" were admissible. *See* Tex. Code Crim. Proc. Ann. art. 38.22, § 3(c) (West 2005).[1]

Calderon contends that based on the district court's findings, the entirety of his statements should have been suppressed. Article 38.22, section 3(c) of the Texas Code of

---

[1] Interestingly, the State attempted to argue that article 38.22, section 3(c), when applicable, requires that the entire statement be admissible, *see Moore v. State*, 999 S.W.2d 385, 400-01 (Tex. Crim. App. 1999), but the district court was not inclined to "hear a legal dissertation" on the matter.

Criminal Procedure provides that an oral statement asserting facts or circumstances establishing the guilt of the accused is admissible if, at the time it was made, it contained assertions unknown by law enforcement but later corroborated. *See id.*; *Woods v. State*, 152 S.W.3d 105, 117 (Tex. Crim. App. 2004). However, article 38.22, section 3(c) does not render oral statements admissible unless they were obtained in conformity with constitutional requirements. *Perillo v. State*, 758 S.W.2d 567, 574-75 (Tex. Crim. App. 1988); *Taylor v. State*, 874 S.W.2d 362, 365 (Tex. App.—Fort Worth 1994, no pet.); *Port v. State*, 798 S.W.2d 839, 841-42 (Tex. App.—Austin 1990, pet. ref'd). The Fifth Amendment to the United States Constitution mandates that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Under *Miranda*, unless law enforcement officers give certain specified warnings prior to questioning a person in custody and follow certain specified procedures during the course of the interrogation, the prosecution may not use any statement made by the defendant in its case-in-chief over his objection. *See Miranda*, 384 U.S. at 478-79; *Watson v. State*, 762 S.W.2d 591, 596 (Tex. Crim. App. 1988).

The State concedes that if the district court's findings that Calderon was in custody and did not knowingly, intelligently, and voluntarily waive his rights when he made the statements at issue were correct, the district court erred in admitting any portion of the statements. The State argues, however, that contrary to the district court's finding, Calderon did knowingly, intelligently, and voluntarily waive his rights and, therefore, his statements were admissible.[2]

---

[2] Alternatively, the State argues that, contrary to the district court's finding, Calderon was not in custody. *See Herrera v. State*, 241 S.W.3d 520, 525-26 (Tex. Crim. App. 2007) (*Miranda* warnings required only if person in custody, which means that reasonable person would believe his freedom of movement is restrained to degree associated with formal arrest). Given our conclusion on the waiver issue, however, we need not consider the State's alternative argument.

4

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *see also Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). The trial court's denial of a motion to suppress is reviewed for abuse of discretion, *see Oles v. State*, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999), but when the trial court's rulings do not turn on the credibility and demeanor of the witnesses, we apply a de novo standard of review, *see Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005). The burden is on the State to demonstrate that the defendant knowingly and intelligently waived his constitutional privilege against self-incrimination. *See Miranda*, 384 U.S. at 475. Whether a defendant waives his constitutional rights is to be determined from the totality of the circumstances. *Wicker v. State*, 667 S.W.2d 137, 142 (Tex. Crim. App. 1984).

Prior to the jury trial, the district court held a hearing on Calderon's motion to suppress his oral statements to the sheriff's officers. At the hearing, Sergeant Roper testified regarding his conversation with Calderon on the drive to the downtown station. Roper testified that he asked Calderon in English if he was willing to talk about the incident and that Calderon replied that he would. Roper characterized the conversation as "small talk conversation," consisting of "go down and tell the detectives what you know, the truth, that's what we're looking for, things of this sort." Roper also testified that he did not threaten Calderon, make him any promises, or subject him to any physical abuse or coercion.

The statements at issue in Calderon's motion to suppress were made during the interview at the station with Detectives Poole and Rowland. That interview was memorialized in a written transcript that includes an English translation of the portions spoken in Spanish, and the

5

transcript was admitted into evidence at the hearing. The transcript begins with the following discussion between Poole and Calderon, translated from Spanish into English:

Det 1   Martín or Martin?

M       However.

Det 1   Speak English?

M       Not that much.

Det 1   Not that much? I am going to read you something. I am a detective with here, with the Sheriff's department. I am going to read something to you, let's see if you understand everything. You[r] rights. You have the right to remain silent and say absolutely nothing. Any statement that you make may be used against you in court. You have the right to have an attorney present to counsel you before you are questioned and during the time that you are being questioned. If you cannot hire a lawyer you have the right to have one appointed to you for counseling before or during the time that you are questioned. You have the right to terminate this interview at any time you say so. Do you understand everything? Yes?

M       Yes.

Det 1   I am going to sign my name behind just to say that I read everything to you and that you state that you understand. This Detective[:] this case is his case and he is going to be helping me. If you understand your rights I just need you to sign your name here. This is just saying that you understood what I said about the rights. Nothing else. If you can sign here above the day.

Following this discussion, Calderon signed a "blue card" containing "a person's constitutional warnings" in both English and Spanish, which card was admitted into evidence at the hearing. Calderon signed on the back, under the following sentences written in Spanish: "I have received and understand [my Rights] on the other side of this card. I agree to waive these Rights and to [voluntarily] make a Statement."

6

Since the district court's ruling does not turn on the credibility and demeanor of the witnesses,[3] we review de novo the court's finding that there was no knowing, intelligent, and voluntary waiver. *See Estrada*, 154 S.W.3d at 607. Calderon cites to case law providing that waiver is not inferred from acquiescence to questioning alone, *see Watson*, 762 S.W.2d at 602, and that the signing of a boilerplate waiver form, while a factor, is not determinative, *see Goodnough v. State*, 627 S.W.2d 841, 845 (Tex. App.—San Antonio 1982, pet. ref'd). However, in this case, Calderon was informed of his rights both orally and in writing, affirmatively indicated his understanding of those rights both orally and by written signature, signed a boilerplate form providing that he agreed to waive his rights and make a statement, and proceeded to answer Detective Poole's questions without making any indication that he wished to invoke any of his rights. Moreover, there is no evidence that Calderon was threatened or coerced by the sheriff's officers prior to or during the transcribed interview. Based on the totality of the circumstances, we conclude that the district court erred in determining that Calderon did not knowingly, intelligently, and voluntarily waive his rights. *See State v. Oliver*, 29 S.W.3d 190, 193 (Tex. App.—San Antonio 2000, pet. ref'd) (finding existence of waiver where defendant was informed of rights, indicated his understanding of them, and proceeded without hesitation to participate in interview); *Port*, 798 S.W.2d at 843-44 (same).

---

[3] The district court reached its determination that there was no knowing, intelligent, and voluntary waiver based on its review of the transcript and the DVD recording of the interview the night before the hearing, prior to the officers' testimony at the hearing and prior to the admission of the blue card containing waiver language into evidence. After hearing testimony, the court found that Calderon was in custody.

7

Because Calderon waived his rights prior to making the statements at issue, the district court did not err in admitting portions of his statements at trial. *See Romero v. State*, 800 S.W.2d 539, 543-44 (Tex. Crim. App. 1990) (trial court's correct decision regarding admission of evidence sustained even if wrong reason given for decision). Having determined that Calderon's statements were admissible, however, we must determine whether it was reversible error for the district court to have *excluded* portions of the statements. Calderon, on appeal, identifies several portions of the statements he made during the interview that were not admitted at trial and that were "potentially exculpatory," such as a statement indicating his intent to merely scare the occupants of the SUV and statements allegedly indicating that his admitting to handling the revolver was merely an effort to protect someone else in the Town Car. Calderon alleges that the partial admission of his statements resulted in a "distorted and out of context version" of his statements and was not harmless error.

However, the legal basis of a complaint raised on appeal cannot vary from that raised at the trial court. *See* Tex. R. App. P. 33.1(a); *Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004). The district court made two rulings: (1) based on its finding of no waiver, it "excluded the statement in toto," and (2) based on its interpretation of article 38.22, section 3(c), it admitted those portions that it determined were admissible. Calderon objected only to the admission of any portion of the statements, not to the exclusion of certain portions of his statements. Calderon argued simply "that the statement should be suppressed." At the jury trial, he did obtain a running objection to the admission of portions of his statements. However, Calderon did not attempt to admit any

8

portion of his statements that the court determined should remain excluded, or otherwise object to the suppression of any portion that he now argues is exculpatory and should have been admitted.[4]

We reject Calderon's argument that portions of his statements to Detectives Poole and Rowland were improperly admitted because we find that Calderon knowingly, intelligently, and voluntarily waived his rights prior to making those statements. We also reject Calderon's argument on appeal that portions of such statements were improperly suppressed because error was not preserved as to this argument.

### *Suppression of Statements by Fernandez and Martinez*

In two points on appeal, Calderon argues that the trial court erred in suppressing statements made by two passengers in the Town Car at the time of the shooting—Fernandez, the shooter, and Manuel Martinez, who was seated in the back seat next to Fernandez. Appellant sought to admit statements made by each one indicating that Martinez was the one who handed Fernandez the gun. Appellant contends such statements should have been admitted during cross examination of Detective Poole, who had interviewed Fernandez regarding that issue, and again during cross examination of Detective Rowland, who was present during the interviews of Fernandez and Martinez, both performed in Spanish by other deputies. The district court sustained the State's hearsay objection, and the statements by Fernandez and Martinez were not admitted.

---

[4] In fact, Calderon's counsel elicited from Detective Poole on cross examination that during the interview he had made the observation to Detective Rowland that Calderon "might be covering for somebody and not telling [me] everything," with no objection from the State.

Calderon argues that the district court's sustaining of the State's hearsay objections was in violation of his constitutional right to due process.[5] Calderon cites *Chambers v. Mississippi*, in which the United States Supreme Court stated that "where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice." 410 U.S. 284, 302 (1973). The Texas Court of Criminal Appeals, after reviewing *Chambers* and similar federal cases, held that "the exclusion of a defendant's evidence will be constitutional error only if the evidence forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense." *Potier v. State*, 68 S.W.3d 657, 665 (Tex. Crim. App. 2002).[6]

Calderon was able to present his defense that he was not the one who handed the gun to Fernandez. Calderon called Arturo Avila, another passenger in the Town Car on the night of the shooting, as a witness at trial. Avila testified that there were seven people in the car (four in the back seat), that he was seated beside the left door on the back seat, and that Martinez was seated in the back seat next to Fernandez on the right. According to Avila, Martinez was the one who took the gun out from under a seat and handed it to Fernandez, and Calderon did not hand anyone a gun.

---

[5] Calderon also argues that the district court's sustaining of the State's hearsay objections was improper because the statements were admissible as "statements against interest." *See* Tex. R. Evid. 803(24). However, Calderon did not raise this particular hearsay exception at the trial court. The legal basis of a complaint raised on appeal cannot vary from that raised at the trial court. *See* Tex. R. App. P. 33.1(a); *Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004).

[6] Under *Potier v. State*, the exclusion of evidence may also establish a constitutional violation when the state evidentiary rule categorically and arbitrarily prohibits the defendant from offering relevant evidence that is vital to his defense. *See Ray v. State*, 178 S.W.3d 833, 835 (Tex. Crim. App. 2005). However, Calderon does not argue that any evidentiary rule is an arbitrary rule that discriminates against his right to present a defense. *See Stevens v. State*, 234 S.W.3d 748, 785 (Tex. App.—Fort Worth 2007, no pet.).

In addition, at trial, Calderon elicited from Detective Poole over the State's objection that Calderon had initially stated that he was not the person who pulled out the gun, that there was a conflict between Calderon's subsequent statements and Fernandez's statements regarding who handed Fernandez the gun, and that during the interview Detectives Poole and Rowland made an observation that Calderon might be covering up for somebody.

As to the statements actually suppressed, the only questioning by Calderon of Detective Poole to which the court sustained the State's objection was regarding how many people were in the Town Car on the night of the shooting. During Detective Rowland's testimony, Calderon was permitted to make a bill of exception on the issue of who handed Fernandez the gun. According to Rowland's testimony during the bill, Fernandez stated that Martinez handed him the gun, and Martinez stated at one point that Fernandez got the gun from under a car seat but then gave a statement that he handed the gun to Fernandez. Rowland also indicated that he ultimately determined in his final report that Calderon handed the gun to Martinez who in turn handed it to Fernandez.

While the excluded statements were relevant to Calderon's defense, their exclusion did not preclude him from presenting a defense. *See Potier*, 68 S.W.3d at 665-66. The excluded statements, at most, would have "incrementally" furthered Calderon's defense. *See Ray v. State*, 178 S.W.3d 833, 836 (Tex. Crim. App. 2005). Therefore, we hold that the suppression of statements made by Fernandez and Martinez was not constitutional error.

11

*Conclusion*

Having overruled Calderon's points on appeal, we affirm the judgment of the district court.

_____

G. Alan Waldrop, Justice

Before Chief Justice Jones, Justices Waldrop and Henson

Affirmed

Filed:   October 30, 2009

Do Not Publish