**Cornelius Alan GOSS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 70506.**

Court of Criminal Appeals of Texas, En Banc.

March 4, 1992.

Lawrence B. Mitchell, on appeal only, Dallas, for appellant.

John Vance, Dist. Atty., and K. Drew, M. Gandy and A. Beach, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

CAMPBELL, Judge.

Appellant, Cornelius Alan Goss, was convicted of capital murder. Tex. Penal Code § 19.03(a)(2). At the punishment phase of Appellant's trial, the jury answered affirmatively the first two special issues set forth in Article 37.071(b) of the Texas Code of Criminal Procedure.[1] The trial judge then sentenced Appellant to death as required by Article 37.071(e). Direct appeal to this court is automatic. Tex.Code Crim. Proc. art. 37.071 § 2(h). Appellant raises seven points of error. We will affirm.

Appellant was convicted of the intentional murder of Carl Leevy, committed during the course of the burglary of the habitation

---

1. At the time of Appellant's trial, Tex.Code Crim. Proc. art. 37.071(b) provided:

On conclusion of the presentation of the evidence, the court shall submit the following three issues to the jury:
(1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;

(2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and
(3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.
Because the issue of provocation was not raised at Appellant's trial, the trial judge only submitted the first two special issues to the jury.

of Ellen Leevy. Because Appellant's seven points of error are directed to matters of law and there is no challenge to the sufficiency of the evidence, no further explication of the facts is necessary.

In his first point of error, Appellant challenges the constitutionality of the capital sentencing statute, Tex.Code Crim. Proc. art. 37.071(b). Specifically, Appellant contends that the jury charge and attendant instructions, given to the jury at the punishment phase of Appellant's trial, were constitutionally flawed under the United States Supreme Court's decision in *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989).

Appellant's point or error requires this Court to make a determination of whether Appellant presented evidence at trial sufficient to require the trial judge to give a separate jury instruction on mitigation under *Penry.*

In *Penry,* expert testimony at the punishment stage demonstrated the appellant was mildly to moderately retarded. *Penry,* 109 S.Ct. at 2941. Although twenty-two years of age at the time of the crime, Penry had the learning ability of a six-and-a-half-year-old child and the social maturity of a nine or ten year old. *Id.* Penry presented additional evidence of an "organic brain disorder at the time of the offense which made it impossible for him to appreciate the wrongfulness of his conduct or to conform his conduct to the law." *Id.* Penry's mother testified that as a child he was routinely beaten and subject to other, extraordinarily abusive, punishments. *Id.* In addition, Penry was in and out of state hospitals and schools throughout his childhood. *Id.* at 2941–42. Both of the State's psychiatric experts likewise testified that "Penry was a person of extremely limited mental ability, and that he seemed unable to learn from his mistakes." *Id.* at 2942.

Because of the unique nature of Penry's brain damage, mental retardation, and background, the Supreme Court held that the special punishment issues submitted to the jury at Penry's trial were constitutionally defective, in that they did not allow the jury to consider the mitigating weight of his punishment evidence. The *Penry* Court held that the "jury was not provided with a vehicle for expressing its 'reasoned moral response' to that [mitigating] evidence in rendering its sentencing decision." *Id.* at 2952. That is, although the evidence presented by Penry was relevant to assisting the jury in answering the special issues, it was also relevant to Penry's "moral culpability beyond the scope of the special verdict questions." *Franklin v. Lynaugh,* 487 U.S. 164, 108 S.Ct. 2320, 2333, 101 L.Ed.2d 155 (1988) (O'Connor, J., concurring).

In short, even if the jury had deemed the mitigating evidence strong enough to reduce Penry's "personal culpability" for the crime, it had no vehicle, under the special issues, for expressing a "reasoned moral response" that would allow them to give Penry a sentence less than death. The Court's discussion in *Penry* amplifies this quandary:

Underlying *Lockett [v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) ] and *Eddings [v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) ] is the principle that punishment should be directly related to the personal culpability of the criminal defendant. If the sentencer is to make an individualized assessment of the appropriateness of the death penalty, "evidence about the defendant's background and character is relevant because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems, may be less culpable than defendants who have no such excuse." *California v. Brown,* 479 U.S. 538, 545 [107 S.Ct. 837, 841, 93 L.Ed.2d 934] (1987) (concurring opinion). Moreover, *Eddings* makes clear that it is not enough simply to allow the defendant to present mitigating evidence to the sentencer. The sentencer must also be able to consider and give effect to that evidence in imposing sentence. *Hitchcock v. Dugger,* 481 U.S. 393 [107 S.Ct. 1821, 95 L.Ed.2d 347] (1987). Only then can we be sure that the sentencer has treated

the defendant as a "uniquely individual human bein[g]" and has made a reliable determination that death is the appropriate sentence. *Woodson [v. North Carolina],* 428 U.S. 280, 304–5 [96 S.Ct. 2978, 2991, 49 L.Ed.2d 944] (1976). "Thus, the sentence imposed at the penalty stage should reflect a reasoned *moral* response to the defendant's background, character, and crime." *California v. Brown,* supra [479 U.S.] at 545 [107 S.Ct. at 841] (concurring opinion)(emphasis in original).

*Penry,* at 2947.

Based on the Supreme Court's holding in *Penry,* we held in *Lackey v. State,* 819 S.W.2d 111, (Tex.Cr.App.1991) (opinion on motion for rehearing), that to pass constitutional muster a capital sentencing scheme must (1) allow the jury to consider relevant mitigating evidence; and (2) provide the jury with a vehicle to express a reasoned moral response to that evidence in arriving at an individualized punishment assessment. This Court, in *Lackey,* explained with some specificity the criteria necessary for an appellant to successfully raise a *Penry* claim.

First, the evidence presented at trial must be specifically relevant to a defendant's "moral culpability" before it ascends to the level of *Penry*-type evidence. But what, exactly, is moral culpability? The lessening of moral culpability, in the *Penry* context, does not entail the lessening of a defendant's guilt for the commission of a crime—indeed it could not, since at the punishment phase of a capital murder trial, the defendant's guilt is a fait accompli. Rather we look at whether the defendant is less deathworthy, i.e., entitled to the consideration of the jury of the extension of mercy, in the form of a sentence of life imprisonment. This concept is better understood when read in conjunction with *Penry's* mandate that a capital sentencing scheme allow the jury to make "an individualized assessment of the appropriateness of the death penalty, given the

offense and the offender." *Lackey,* supra. Thus, evidence relating to a defendant's moral culpability is that evidence on which the jury may rely in its "overall assessment of the offender." *Id.*

The next question that logically arises is what does the term "individualized assessment" mean? Under the broadest possible construction, a defendant would be allowed to present an infinite amount of evidence that could, theoretically, be used in the jury's overall decision regarding the appropriateness of death. This approach, however, would prove utterly unworkable in practice. Essentially, allowing the jury carte blanche to consider innumerable factors of an individual's background and character would ultimately lead to the imposition of the death penalty based on manifest irrelevancies; in sum, a "popularity contest" in which the more personally appealing or sympathetic defendants would receive a life sentence and the less attractive and sympathetic defendants would receive a death sentence. Clearly, such an approach would lead precisely to sentences "so wantonly and so freakishly imposed" as to be unconstitutional under *Furman v. Georgia,* 408 U.S. 238, 310, 92 S.Ct. 2726, 2763, 33 L.Ed.2d 346 (1972) (Stewart, J., concurring). See also, *Walton v. Arizona,* — U.S. ——, 110 S.Ct. 3047, 3058–3068, 111 L.Ed.2d 511 (1990) (Scalia, J., concurring).

In *Lackey,* we further suggested that mitigating evidence is relevant to the jury's individualized assessment of the propriety of death if there is a nexus between the mitigating evidence and the circumstances surrounding the crime that might, from the viewpoint of society, reduce the defendant's "deathworthiness." [2] In other words, the evidence must tend to excuse or explain the criminal act, so as to make that particular defendant not deserving of death. See also, *Penry,* supra at 2947, citing *California v. Brown,* 479 U.S. at 545, 107 S.Ct. at 841 ("If the sentencer is to make an individualized assessment of the

---

**2.** But, cf., *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); *Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982); *Lackey v. State,* 819 S.W.2d 111, 135 fn. 10 (Tex.Cr.App.1991) (opinion on motion for rehearing).

appropriateness of the death penalty, 'evidence about the defendant's background and character is relevant because ... defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems, may be less culpable than defendants who have no such excuse.' ").

■ Once a defendant has presented such mitigating evidence, the jury must be given the means to give adequate consideration to that evidence. Obviously it does no good to allow the jury to hear mitigating evidence if it is not presented with a vehicle through which to express its "reasoned moral response" to such evidence. The phrase "reasoned moral response" is nothing if not amorphous. In *Trevino v. State*, 815 S.W.2d 592, (Tex.Cr.App.1991), we held that "allowing the jury to express its 'reasoned moral response' means something more than affording the jury the opportunity to express its 'sympathy or emotion' towards the defendant and as such the evidence presented must be the same or of similar character and quality as that found in *Penry*."

■ The final question necessary to the resolution of a *Penry*-type claim is whether the special issues submitted to the jury were vehicles sufficient to allow the jury to give its reasoned moral response to any relevant mitigating evidence (as defined above) presented by the defendant. If the answer to that question is "no," then certainly a *Penry* instruction is required, for "it is clear that relevant mitigating evidence may not be excluded in the capital sentencing process." *Lackey*, supra.

■ Our review of the record of Appellant's trial does not reveal the existence of any evidence sufficient in character and quality to require a special *Penry* instruction. Certainly, the mitigating evidence raised by Appellant was not of the same character or quality as that in *Penry*. At the punishment stage, Appellant offered evidence from two expert witnesses, who testified concerning the difficulty and complexity of trying to determine future dangerousness. This expert testimony was focused primarily on rebutting the State's

expert, who testified that a hypothetical individual who committed the acts of which Appellant was convicted would probably commit additional acts of criminal violence in the future.

In addition, Appellant's sister and a childhood friend testified as character witnesses. The mitigating evidence offered by these witnesses fell into three discrete categories: (1) evidence of good character (helpful as a child; very religious); (2) evidence of a troubled childhood (instances of being beaten with a shoe, belt and wooden slat; did not know his mother until late in his development); and (3) evidence of intoxication at the time of the murder. No testimony was offered by Appellant as to any mental disorder or physiological damage actually suffered by Appellant that would help explain why he "was less morally 'culpable than defendants who have no such excuse'...." *Penry*, supra at 2949.

Applying the above *Penry* analysis to Appellant's mitigating punishment evidence, we find that this evidence is not relevant, *beyond the scope of the special issues*, to the jury's individualized assessment of Appellant's moral culpability for the crime. See *Lackey*, supra. None of the evidence presented by Appellant's witnesses sought to explain the connection between the apparently isolated problems of his childhood and the commission of the crime. Moreover, neither of Appellant's experts offered any diagnosis, theory or explanation that was not directly related to the jury's consideration of the special issues.

In *Trevino*, supra, we held that evidence that the appellant came from a "disruptive family" and had a "tragic family life" was not relevant, beyond the scope of the special issues, to the jury's expression of a reasoned moral response:

The evidence in this case, however, does not fit into the Supreme Court's rubric of allowing the jury to express its reasoned moral judgment. The evidence is unrelated to any aspect of how or why death in this case would or would not be an appropriate response to appellant's

actions and the nonspecific facts of appellant's life are no where comparable to that found in *Penry*.

We find this analysis dispositive of the instant case. Simply put, not one shred of Appellant's background and character evidence is relevant, beyond the scope of the special issues, to the jury's fair determination of Appellant's deathworthiness for the crime he committed. We find that all of Appellant's mitigating evidence was adequately encompassed within the jury's consideration of special issue two; that is, whether the murder was an aberration or an indication of Appellant's propensity to commit future acts of violence. See *Boyd v. State*, 811 S.W.2d 105 (Tex.Cr.App.1991) (good character evidence requires no *Penry* instruction); *Lackey*, supra (jury was fully able to consider the mitigating effect of evidence of physical abuse and troubled childhood, under special issue number two). Consequently, no separate *Penry* instruction was necessary. Point of error number one is overruled.

◼ In point of error number three, Appellant specifically complains that the trial judge erred in not defining the word "deliberately" in a manner that could fully effectuate the jury's consideration of any mitigating evidence bearing on Appellant's personal culpability.

As discussed more fully above, the mitigating evidence in the case at bar was not of the same quality and character as that found in *Penry*. In *Penry*, the Court recognized that a rational juror could have found that Penry's evidence of brain damage and severe child abuse made him less morally culpable than other defendants with no such excuse. However, that same juror could also have found that Penry deliberately committed the crime. Thus, under such an application of the special issue sentencing scheme, Penry's evidence

3. No evidence was presented by Appellant that he was an alcoholic, or that his intoxication, if any, at the time of the offense was such that it rose to the level of temporary insanity. See Tex.Penal Code § 8.04.

4. Tex.R.Crim.Evid. 705(b) provides:

only acted as an aggravating factor in the jury's determination of his deathworthiness—even if society as a whole might deem this individual not worthy of death because of his background and physiological damage. There is no such danger in the case-at-bar.

The only evidence of diminished capacity was one oblique reference that Appellant looked "stoned." Given the fact that the trial judge defined deliberately as "something more than intentional and something less than premediation [sic]," the jury was fully capable of taking into account Appellant's possible intoxication at the time of the crime in its determination of whether Appellant deliberately committed the murder in question.[3] The remainder of Appellant's punishment evidence had no relevance to special issue number one, but was adequately encompassed within special issue two. The jury thus had a sufficient means to give full effect to Appellant's relevant mitigating evidence. Appellant's third point of error is overruled.

◼ Appellant's sixth point of error asserts the trial judge erred in overruling Appellant's motion to conduct a voir dire examination of State's expert Jeffery Sigel, made pursuant to Tex.R.Crim.Evid. 705(b).[4] In his brief, Appellant predicates error on the fact that "the trial court denied appellant's specific motion requesting the right to conduct a voir dire of the expert prior to testimony and ruled that he would be allowed to testify without the conducting of such a hearing."

Because the facts revealed by this Court's review of the record conflict with the version of events recounted in Appellant's brief, we briefly summarize our findings. On July 18, 1988, there was a pretrial hearing, at the conclusion of which the following exchange occurred:

> Prior to the expert giving his opinion or disclosing the underlying facts or data, a party against whom the opinion is offered shall, upon request, be permitted to conduct a voir dire examination directed to the underlying facts or data upon which the opinion is based. This examination shall be conducted out of the hearing of the jury.

THE COURT: Is there anything anybody would like to go over before the jury comes tomorrow?

DEFENSE COUNSEL: Just, are you going to make a ruling on the motions filed today on the experts?

THE COURT: Let me find it.

DEFENSE COUNSEL: To allow the hearing outside the presence of the jury.

DEFENSE COUNSEL: That is just asking for a hearing under 705.

THE COURT: Yes, *that is granted.*

Three days later, immediately prior to the testimony of Dr. Sigel, the trial judge made the following statement outside the presence of the jury:

> For the purposes of the record, the defense has filed a motion to have a hearing outside the presence of the jury to determine underlying facts of this next witness's opinion. I am going to now ease my rulings on that to allow the testimony without the hearing being had.

The record clearly demonstrates that, contrary to Appellant's assertions otherwise, the trial judge granted his motion for a Rule 705(b) hearing. Then, for reasons not apparent from the record, the trial judge decided to proceed without the hearing. Nowhere in the record is there any indication that appellant objected to the trial judge's decision, sua sponte, to alter his earlier ruling and proceed without the Rule 705(b) hearing.

■ Under Rule 705(b), the defendant in a criminal trial is undeniably entitled, upon timely request, "to conduct a voir dire examination directed to the underlying facts or data upon which the opinion [of the State's expert] is based." The trial court must allow this examination to be conducted "[p]rior to the expert giving his opinion" and "out of the hearing of the jury." See Tex.R.Crim.Evid. 705(b). Affording a defendant the chance to voir dire the State's expert witnesses gives defense counsel the opportunity to determine the foundation of the expert's opinion without fear of eliciting damaging hearsay or other inadmissible evidence in the jury's presence. S. Goode, et al., 33 *Texas Practice* § 705.2 (1988). A Rule 705(b) hearing may also supply defense counsel with sufficient ammunition to make a timely objection to the expert's testimony on the ground that it lacks a sufficient basis for admissibility. Id. Because of the mandatory nature of Rule 705(b), a trial judge's denial of a timely and proper motion for such hearing would constitute error. In such a case, a reviewing court would then be required to decide whether the trial judge's error was so harmful as to require a reversal.

In the instant case, however, we need not conduct a harmless error analysis because appellant failed to lodge an objection contemporaneous with the trial judge's deviation from his earlier ruling on appellant's motion. See Tex.R.App.Proc. 52(a).[5] Instead, we find that appellant has waived error on this point by failing to timely object.

■ In reaching our decision, we analogize the instant case to this Court's decisions regarding motions in limine.[6] It is well-settled that, regardless of a favorable ruling on a motion in limine, a defendant must make a contemporaneous objection to sustain the error for appellate review. *Willis v. State,* 785 S.W.2d 378, 384 (Tex.

---

**5.** Tex.R.App.Proc. 52(a) provides:
   In order to preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling he desired the court to make if the specific grounds were not apparent from the context. It is also necessary for the complaining party to obtain a ruling upon the party's request, objection or motion. If the trial judge refuses to rule, an objection to the court's refusal to rule is sufficient to preserve the complaint. It is not necessary to formally except to rulings or orders of the trial court.

**6.** Appellant's motion resembles a motion in limine in that it sought to obtain a pretrial ruling by the trial judge concerning appellant's right to take the witness on voir dire, outside the presence of the jury, in order to determine the admissibility of his testimony. See Hazel, *The Motion in Limine: A Texas Proposal,* 21 Hous. L.Rev. 919, 920 (1984) ("When the motion [in limine] is granted, it merely requires the proponent of the evidence to approach the judge during trial, outside the jury's hearing, to get a ruling on admissibility").

Cr.App.1989), cert. denied, —— U.S. ——, 111 S.Ct. 279, 112 L.Ed.2d 234 (1990); *Gonzales v. State*, 685 S.W.2d 47, 50 (Tex.Cr. App.), cert. denied, 472 U.S. 1009, 105 S.Ct. 2704, 86 L.Ed.2d 720 (1985) ("For error to be preserved with regard to the subject matter of the motion in limine it is absolutely necessary that an objection be made at the time when the subject is raised during the trial"). In the instant case, even though Appellant made a timely request under Rule 705(b) for a sub rosa hearing, when the trial judge subsequently altered his original ruling, Appellant remained silent and did not voice an objection to the introduction of the expert's testimony. We find under these specific facts that Appellant's failure to object when the trial judge decided to proceed without a Rule 705(b) hearing, effectively waived that point of error for review purposes. Point of error number six is overruled.

■ In point of error seven, Appellant claims the trial judge committed reversible error by refusing to define the term "beyond a reasonable doubt." We disagree. At the time of Appellant's trial, the longstanding rule in this State was that a trial judge need not define or amplify the term "reasonable doubt." See, e.g., *McGinty v. State*, 723 S.W.2d 719, 720–21 (Tex.Cr.App. 1986). This Court's recent decision in *Geesa v. State*, 820 S.W.2d 154 (Tex.Cr.App. 1991), requiring a definitional instruction on the term "reasonable doubt," is not retroactive and has no bearing on our resolution of Appellant's argument. Appellant's seventh point of error is overruled.

■ Appellant's remaining three points of error argue that the trial court erred in not defining in its jury charge, at the sentencing stage of Appellant's trial, the following terms: "criminal acts of violence," "probability," and "continuing threat to society." We disagree.

Article 3.01 of the Texas Code of Criminal Procedure provides: "All words, phrases and terms used in this Code are to be taken and understood in their usual acceptation in common language, except where specially defined." This article applies to the terms "criminal acts of violence,"

"probability," and "continuing threat to society." *King v. State*, 553 S.W.2d 105, 107 (Tex.Cr.App.1977), cert. denied, 434 U.S. 1088, 98 S.Ct. 1284, 55 L.Ed.2d 793 (1978); see also, e.g., *DeLuna v. State*, 711 S.W.2d 44, 47 (Tex.Cr.App.1986), cert. denied, 493 U.S. 900, 110 S.Ct. 259, 107 L.Ed.2d 208 (1989) (holding that it is "well-settled" that "a probability" need not be defined in the court's charge to the jury); *Adams v. State*, 577 S.W.2d 717, 730 (Tex.Cr.App. 1979), modified, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980) (no definition of "criminal acts of violence" need be given to jury).

Furthermore, the trial judge's refusal to define these terms poses no constitutional problems. *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976) (affirming the constitutional validity of article 37.071 as worded, and without reference to special definitions); see also, *Caldwell v. State*, 818 S.W.2d 790 (Tex.Cr.App.1991). Appellant's second, fourth, and fifth points of error are overruled.

The judgment of the trial court is AFFIRMED.

MILLER and OVERSTREET, JJ., concur in the result.

CLINTON, Judge, dissenting.

Once again a plurality of the Court resorts to an illusory "nexus" requirement to hold that evidence of good character and proof of a troubled youth have no bearing on a jury's assessment of the "deathworthiness" of an accused. See *Lackey v. State*, 816 S.W.2d 392 (Tex.Cr.App.1991) (Clinton, J., dissenting); *Ex Parte Bower*, 823 S.W.2d 284 (Tex.Cr.App., Nos. 70,995–70,-998, delivered December 4, 1991) (Clinton, J., dissenting). Moreover, once again the plurality fails squarely to confront the question of voluntary intoxication as a mitigating factor significant beyond the scope of the special issues. *Lackey v. State*, supra; *Ex Parte Rogers*, 819 S.W.2d 533 (Tex.Cr.App.1991) (Clinton, J., dissenting). For reasons expressed in the foregoing opinions, I dissent here as well.

I must also dissent to the plurality's disposition of appellant's sixth point of error. The plurality holds under Tex.R.App.Pro., Rule 52(a), that appellant failed to preserve error for appeal. I cannot agree. Appellant clearly "presented to the trial court a timely request ... stating the specific grounds for the ruling he desired the court to make...." That the trial judge initially granted the request does not alter the fact that, with full knowledge of the nature and substance of that request, he ultimately denied it. Thus, appellant obtained an adverse ruling. Application of the rule in this context cannot be any simpler.

In arguing appellant should have objected when the trial court changed its ruling, the plurality draws an oblique analogy to motion in limine practice. The analogy is flawed. We have indeed held that a motion in limine does not preserve error for appeal. By that we mean that a motion in limine does not constitute an objection to the admissibility of evidence at trial. A motion in limine is no more than a request that the trial court conduct an in camera hearing before deciding upon a question of admissibility of evidence, so that the opposing party does not risk having the jury hear inadmissible evidence before he has a chance to challenge it. *Romo v. State*, 577 S.W.2d 251, at 252 (Tex.Cr.App.1979); J.P. Hazel, The Motion In Limine: A Texas Proposal, 21 Houston L.Rev. 919, at 920 (1984). The motion in limine does not in itself, however, seek the exclusion of evidence. Therefore, notwithstanding any earlier motion in limine, it is incumbent on the opposing party to object to admission of evidence during trial in order to preserve error for appeal. *Id.* But appellant does not complain of the admission of the testimony of the State's expert. Rather, he complains he was denied what Rule 705(b) mandates he be given "upon request," that is, "a voir dire examination directed to the underlying facts or data upon which the [expert] opinion is based." Transposed for

motion in limine, appellant's argument would be that the trial court erred in failing to grant his motion in limine in the first instance; that is, erred in not requiring an in camera conference outside the jury's presence at which *to determine* admissibility of contested evidence. There is a difference, however, between a requested motion in limine and a Rule 705(b) request. Motion in limine is not a creature of rule or statute. Whether to grant it is purely discretionary with the trial court. By contrast, as I read Rule 705(b) (and indeed, as the plurality reads it too, Majority Opinion at 168), voir dire under Rule 705(b), once requested, is not discretionary at all.

It may well be that even if it could be said to be error to deny a motion in limine, that error would prove harmless where the evidence that is the subject of the requested limine motion ultimately proves to be admissible. E.g., *Lopez v. State*, 535 S.W.2d 643, at 650 (Tex.Cr.App.1976).* We cannot even say that here, however, because to this day we do not know whether appellant might validly have challenged admissibility of the State's expert's testimony, since he was never allowed to obtain the very discovery that the plurality itself agrees Rule 705(b) guarantees him.

Nothing more can possibly be expected to preserve error than what Rule 705(b) and Rule 52(a) together contemplate, *viz:* a "request," and an adverse ruling thereon. The record here shows both. Cases pertaining to motion in limine practice are inapposite.

We should not denigrate our now-codified contemporaneous objection rule by misapplying it in such a manner. Because the Court refuses to reach the merits of appellant's sixth point of error, I dissent.

BAIRD, Judge, dissenting.

I respectfully dissent to the disposition of appellant's sixth point of error for the following reasons. Prior to trial, appellant

---

* That a motion in limine has been granted and violated "may entitle a party to relief, but any remedies available with regard to such a violation are with the trial court. If its order has been violated, the trial court may apply the sanctions of contempt or take other appropriate action." *Brazzell v. State*, 481 S.W.2d 130, at 131 (Tex.Cr.App.1972). See also *Gonzales v. State*, 685 S.W.2d 47, at 51 (Tex.Cr.App.1985).

filed a written motion to conduct a voir dire examination of the State's expert witness, Jeffrey Sigel. The trial judge granted appellant's motion. However, when the State called Sigel as a witness, the trial judge reversed his earlier ruling and denied appellant the opportunity to question Sigel. Appellant contends the trial judge erred in refusing to permit the voir dire examination. I agree. However, the plurality concludes that the point of error is not preserved for appellate review because appellant failed to object to the trial judge's reversal of his earlier ruling. Such a conclusion allows the plurality to avoid conducting a harm analysis. *See* Tex.R.App. P. 81(b)(2).

As a general rule a party must pursue an objection until he obtains an adverse ruling. Failure to obtain an adverse ruling will generally prevent review on appeal. *Denison v. State*, 651 S.W.2d 754, 761 (Tex. Cr.App.1983); *Burks v. State*, 432 S.W.2d 925, 926 (Tex.Cr.App.1968); *Cazares v. State*, 488 S.W.2d 110, 112 (Tex.Cr.App. 1973); *Jones v. State*, 482 S.W.2d 634, 636 (Tex.Cr.App.1972); and *Shipp v. State*, 482 S.W.2d 870, 871 (Tex.Cr.App.1972). There is no requirement that one repeat the objection once an adverse ruling is obtained. *See, Waller v. State*, 581 S.W.2d 483, 485 (Tex.Cr.App.1979) (Opinion on motion for rehearing); *Harryman v. State*, 522 S.W.2d 512, 516 (Tex.Cr.App.1975); *Roberts v. State*, 545 S.W.2d 157, 158 (Tex.Cr. App.1977); and Tex.R.App. P. 52(b). Likewise, there is no requirement that a defendant lodge an objection to the reversal of an earlier ruling. *Peake v. State*, 792 S.W.2d 456, 459 (Tex.Cr.App.1990). This is so because the reversal of the earlier favorable ruling is *per se* an adverse ruling.

In the instant case, appellant clearly received an adverse ruling from the trial judge. The record is clear that all parties

understood that a request to voir dire the witness was made and that the trial judge overruled the request. Under these circumstances there should be no requirement for appellant to object to the trial judge's reversal of his earlier ruling. Justice is thwarted, not served, when we invent procedural hurdles to avoid addressing valid complaints on appeal.

Finally, I do not agree with the analogy between a motion in limine and the instant case. A motion in limine is nothing more than a broad general objection which operates as a request to limit the presentation of evidence in a manner which will avoid prejudicing a jury prior to the court's ruling on the evidence. *Norman v. State*, 523 S.W.2d 669 (Tex.Cr.App.1975). In my opinion, appellant's specific written motion to voir dire the State's expert witness is much more than a motion in limine. Rather, I find the instant case analogous to a trial judge's refusal to allow a defendant to make a bill of exception. The right to make a bill of exception is absolute.[1] *Spence v. State*, 758 S.W.2d 597, 599 (Tex. Cr.App.1988); *Tatum v. State*, 798 S.W.2d 569, 571 (Tex.Cr.App.1990); and, *Salazar v. State*, 795 S.W.2d 187, 193 (Tex.Cr.App. 1990). Likewise, a request to conduct voir dire examination of an expert is absolute. Tex.R.Crim.Evid. 705(b) ("... a party against whom the opinion is offered *shall*, upon request, be permitted to conduct a voir dire examination....").[2]

Accordingly, I would abate this appeal and remand this case to the trial court to allow appellant the opportunity to conduct a voir dire examination of Sigel pursuant to Tex.R.Crim.Evid. 705(b). *Spence v. State*, 758 S.W.2d at 600. Such action would provide this Court with a record sufficient to determine if this type of error is subject to a meaningful harmless error analysis pursuant to Tex.R.App.P. 81(b)(2).[3] For these

---

1. However, in *Port v. State,* 798 S.W.2d 839, 848 (Tex.App.—Austin 1990, pet. ref'd), the Court of Appeals held that there is no entitlement to make a record where the trial court lacked jurisdiction to hear the matter.

2. Unless otherwise indicated, all emphasis herein is supplied by author.

3. Abating this appeal and remanding this case to the trial court would be consistent with other opinions by this Court where, in similar situations, we provided the parties with an opportunity to develop a complete record for appellate review. *See, Keeton v. State,* 724 S.W.2d 58, 66 (Tex.Cr.App.1987); *DeBlanc v. State,* 732 S.W.2d 640, 642 (Tex.Cr.App.1987); *Janecka v. State,*

reasons, I join the dissenting opinion authored by Judge Clinton and likewise dissent.

MALONEY, J., joins this opinion.

739 S.W.2d 813, 842 (Tex.Cr.App.1987) (Opinion on motion for rehearing); *Chambers v. State,* 742 S.W.2d 695, 696 (Tex.Cr.App.1988); *Tompkins v. State,* 774 S.W.2d 195, 201 (Tex.Cr.App. 1987); and *Oliver v. State,* 808 S.W.2d 492, 496 (Tex.Cr.App.1991).