*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

★ ★ ★ ★ ★ ★

# MEMORANDUM OPINION

No. 04-07-00726-CR

Ruben **ZAVALA**, Jr.,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 175th Judicial District Court, Bexar County, Texas
Trial Court No. 2006-CR-8491B
Honorable Mary Román, Judge Presiding

Opinion by:    Catherine Stone, Justice

Sitting:    Catherine Stone, Justice
    Phylis J. Speedlin, Justice
    Steven C. Hilbig, Justice

Delivered and Filed:  December 31, 2008

AFFIRMED

Ruben Zavala, Jr. was charged with injury to a child.  He was found guilty and sentenced to 67 years imprisonment and a fine of $5,000.  Zavala appeals his conviction, arguing that the trial court erred when it (1) denied Zavala's motion to suppress a portion of his statement made to police detectives; (2) denied Zavala's motion for a new trial based on the probative value of his recorded statements being substantially outweighed by the danger of unfair prejudice; (3) denied Zavala's

motion for a new trial based on inadmissible evidence of uncharged extraneous conduct presented to the jury in Zavala's recorded and written statements; and (4) denied Zavala the opportunity to *voir dire* the State's medical expert outside the presence of the jury. We affirm the trial court's ruling.

## FACTUAL AND PROCEDURAL HISTORY

Priscilla Plaza and her five-year-old child Nicholas moved in with Plaza's boyfriend, Zavala, in July of 2001. Nicholas's maternal grandmother filed a report with Child Protective Services ("CPS") in August of 2001 due to concerns with the way Plaza was caring for Nicholas and concerns she had about Zavala. A CPS investigator attempted to visit the house several times, but was never able to speak with Plaza or Nicholas. In October of 2001, Plaza returned to the house one day to find Nicholas gone; Zavala claimed Nicholas had been taken away by CPS investigators and that Plaza's mother was with him. In November of 2001, a CPS investigator finally made contact with Plaza; when she asked Plaza where Nicholas was, Plaza said she did not know. After speaking with the CPS investigator, Plaza filed a missing persons report. Zavala was arrested and eventually charged with injury to a child. He was convicted and sentenced by a jury to 67 years in prison, plus a $5,000 fine. Nicholas's body was never recovered.[1]

## MOTION TO SUPPRESS THE VIDEO STATEMENT

In his first and second issues, Zavala argues that the trial court erred when it denied his motion to suppress a portion of his DVD statement made to police detectives. After he was arrested, Zavala was interviewed by several San Antonio Police Department detectives regarding Nicholas and his disappearance. The interview was video recorded. At one point in the interview, the following exchange occurred:

---

[1] The record indicates Nicholas suffered numerous injuries before his disappearance; however, in the absence of any evidentiary challenge, we will not detail Nicholas's tragic decline.

Detective:     I just feel like you know a lot more than you are telling me. Well, not a lot more, but at least more. Does that make sense?

Zavala:        I understand. I understand what you're talking about. Look man, when I get bailed out, can I come talk to you?

Detective:     You can talk to me any time you want.

* * * *

Zavala:        You said one thing that made a lot of sense man. You said, look man you said. Is this off the record, or is this on the record?

Detective:     I don't know what you mean by on or off the record. You and I are talking. I'm a detective. You've been read your rights and you understand.

Zavala:        Yeah. Okay well I want this — if this is off the record man, you know, what I mean by off the record, is, is this going to be held against me, right here what we say?

Detective:     I, you know I can't give you any guarantees on anything. I can't tell you; I have don't have the power to say, when, this is it.

Zavala:        You know, if, if it's off the record, I want, you know, I want to say something to you right now. If it's on the record man, I'll go ahead and wait and we'll just take our day.

Detective:     Just tell me. I can't tell you whether it's on or off the record till I know what you've got to tell me.

Zavala went on to say that while he had been honest in previous interrogations, he lied when he said he did not know where Nicholas was buried. He told the detectives he would take them to the location when he was released on bond. The remainder of the recording included various references to the location of the body.[2]

---

[2] Detectives searched the areas where Zavala told them he buried the body and other evidence; however, nothing was found.

We review a trial court's ruling on the admissibility of an oral or written statement under a bifurcated standard of review. *Carmouche v. State,* 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We afford almost total deference to the trial court's determination of historical facts that the record supports, especially when the fact findings are based on an evaluation of the witnesses' credibility and demeanor. *Guzman v. State,* 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997); *Perez v. State,* 103 S.W.3d 466, 468 (Tex. App.—San Antonio 2003, no pet.). We review *de novo* the court's application of the law to the facts. *Guzman,* 955 S.W.2d at 89; *Perez,* 103 S.W.3d at 468.

The Fifth Amendment to the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." The Due Process Clause of the Fourteenth Amendment makes this guarantee applicable to the states. *Malloy v. Hogan,* 378 U.S. 1, 8 (1964). In *Miranda v. Arizona,* the United States Supreme Court held that a person questioned by law enforcement officers after being "taken into custody or otherwise deprived of his freedom of action in any significant way" must first "be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." 384 U.S. at 444. "If the individual [in custody] indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." *Id.* at 473-474. The *Miranda* warnings are codified in Article 38.22 of the Texas Code of Criminal Procedure.

When a statement is being made by a suspect in custody, "a failure to cut off questioning after a suspect invokes his right to remain silent violates his rights and renders any subsequently obtained statements inadmissible." *Dowthitt v. State,* 931 S.W.2d 244, 257 (Tex. Crim. App. 1996) (citations omitted). However, "an officer need not stop his questioning unless the suspect's

invocation of rights is unambiguous, and the officer is not required to clarify ambiguous remarks."
*Id.* (citations omitted).

Here, Zavala never unequivocally informed the detectives that he wanted to invoke his right to remain silent. When Zavala first asked whether his statements were on or off the record, the detective reminded Zavala that he had been read his rights and that he understood them, as Zavala had signed a card acknowledging he understood anything said could be used against him. Zavala's question to the detective about whether or not his statements were off the record and whether they would be used against him indicated his understanding of the earlier warnings. *See, e.g., Johnson v. State,* No. 2-05-043-CR, 2008 WL 563305, at *2 (Tex. App.—Fort Worth Mar. 9, 2006, no pet.) (mem. op.) (not designated for publication) (noting that the defendant's request to go "off the record" after acknowledging his *Miranda* rights showed he understood his rights and chose to waive them). The detective never gave Zavala any false indication that Zavala would be protected from his own statements. At most, the detective told Zavala that he could not determine if Zavala's comments would be off the record until he learned what the comments were. Zavala, who gave no indication that he no longer understood the prior warnings, chose to provide the information. Zavala could have refused to continue the interview at any time, but he did not. When viewed in the light most favorable to the trial court's ruling, and deferring to the trial court's determination of credibility and demeanor, we hold the record supports the court's ruling that the oral statement did not stem from an illegal continuation of Zavala's interrogation. Zavala's first and second issues are overruled.

## BALANCING TEST

In his third issue, Zavala argues that the trial court erred when it overruled the motion for new trial because the probative value of the DVD recording of Zavala's police interrogation was

substantially outweighed by the danger of unfair prejudice and the needless presentation of cumulative evidence. In the DVD recording, Zavala admitted he was at fault for not getting Nicholas medical care, although he did not admit to injuring or killing him. Zavala also admitted that he took care of Nicholas, and that he did not take him for medical care because he was wanted by police. Zavala also admitted to lying to another detective about the whereabouts of Nicholas, and told the detective that he would take the police to the body once he was let out of jail on bond. During the DVD recording, both Zavala and the detective showed emotion and used curse words.

In support of his argument, Zavala contends the court failed to conduct a Rule 403(b) balancing test when he objected to the prejudicial effect of the DVD; the cumulative effect of over three hours of DVD testimony led the jury to make its decision on an improper emotional basis; and most of the evidence obtained through the DVD was cumulative of Zavala's written statements. Zavala contends this resulted in the DVD having a substantial effect on the outcome of the trial.

A trial court's ruling admitting or excluding evidence is reviewed on appeal for abuse of discretion. *Ramos v. State*, 245 S.W.3d 410, 417-18 (Tex. Crim. App. 2008). In other words, the trial court's ruling will be upheld if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Id.*

Texas Rule of Evidence 403(b) states that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." The Texas Court of Criminal Appeals expounded on the balancing test required when determining whether evidence is more probative than prejudicial:

> The term "probative value" refers to the inherent probative force of an item of evidence—that is, how strongly it serves to make more or less probable the existence

of a fact of consequence to the litigation—coupled with the proponent's need for that item of evidence. When conducting the balancing test under Rule 403, the trial court determines whether the probative value of the evidence is substantially outweighed by one of the following countervailing considerations listed in the rule.

"Unfair prejudice" refers to a tendency to suggest [a] decision on an improper basis, commonly, though not necessarily, an emotional one. Evidence might be unfairly prejudicial if, for example, it arouses the jury's hostility or sympathy for one side without regard to the logical probative force of the evidence.

. . . . In sum, a trial court must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or repeat evidence already admitted.

*Casey v. State*, 215 S.W.3d 870, 879-80 (Tex. Crim. App. 2007) (internal citations omitted).

Zavala argues that the trial court failed to conduct a Rule 403(b) balancing test. The plain language of Rule 403 states all relevant evidence is subject to its general balancing determination. TEX. R. EVID. 403. Zavala argues that the trial court never performed the balancing test, nor did it reveal its reasoning in allowing the DVD into evidence. However, Zavala acknowledges that after the first part of the DVD was shown on a Friday afternoon, the trial court ruled the DVD was more prejudicial than probative, and stated the remainder of the DVD would not be played. When the trial resumed on Monday, the parties made further arguments regarding the probative nature of the DVD, and the trial court reversed its ruling, allowing the remainder of the DVD to be played for the jury. Zavala renewed his Rule 403(b) motion and moved for a mistrial, which was denied. Also on that Monday, the trial court commented that "as far as the balancing test is concerned, I certainly will

provide that information as soon as it's necessary." This statement shows that the trial court performed the balancing test.

Balancing the factors set forth by Rule 403(b), we hold the evidence presented in the DVD recording is more probative in value than its prejudicial effect. *See Casey*, 215 S.W.3d at 880. While much of the evidence presented was cumulative of that presented in Zavala's written statements or through other witnesses' testimony, the DVD presented many probative pieces of evidence that had not previously been offered from Zavala himself. The jury heard Zavala admit for the first time that he recognized Nicholas was extremely ill, and that he should have taken Nicholas in for medical care. This evidence also helped to rebut Zavala's attempt to shift blame to others, including Plaza and Zavala's parents. While the DVD recording was lengthy, it was not inordinately long nor was it so long as to distract the jury from the primary issues in the case. The court did not abuse its discretion in denying Zavala's motion for a new trial and allowing the DVD into evidence; therefore, Zavala's third issue is overruled.

### EXTRANEOUS BAD ACTS

In his next two issues, Zavala argues that the court erred in admitting the DVD recording and Zavala's three written statements into evidence because they contained evidence of uncharged extraneous crimes. He also complains of the denial of his subsequent motion for a new trial for the same reason. In both the video and the written statements, Zavala spoke about his role in disposing of Nicholas's body. He argues that the evidence concerning disposal of Nicholas's body, and his later offer to go with police to the place where the body was left, was evidence of an extraneous crime, wrong, or bad act, and that it spoke to character traits of violence, deceitfulness, and general propensity to murder. Zavala argues that this evidence was not admissible because it had no

relevance apart from its tendency to prove traits of Zavala's character, and that he acted in conformity with those traits.

We review rulings on the admissibility of evidence under an abuse of discretion standard. *Santellan v. State,* 939 S.W.2d 155, 169 (Tex. Crim. App. 1997). As long as the trial court's ruling was within the "zone of reasonable disagreement," there is no abuse of discretion, and we will uphold the trial court's ruling. *See id.* Rule 404(b) states:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction.

TEX. R. EVID. 404(b). Under this rule "same transaction contextual evidence" provides the trier of fact with information essential to understanding the context and circumstances of events which, although they may be separate offenses, are blended or interwoven in such a way that they are better understood when taken together. *Camacho v. State*, 864 S.W.2d 524, 532 (Tex. Crim. App. 1993). Therefore, while contextual evidence may not be admissible for the purpose of showing character conformity, it can be used to illuminate the nature of the crime alleged. *Id.*

In addition to satisfying the requirements of same transaction contextual evidence, to be admissible, extraneous offense evidence must also satisfy the Rule 403(b) balancing test, discussed above. TEX. R. EVID. 403; *King v. State*, 189 S.W.3d 347, 354 (Tex. App.—Fort Worth 2006, no pet.). "Generally, although a trial court must still perform a balancing test to see if the same transaction contextual evidence's probative value is substantially outweighed by its prejudicial effect, the prejudicial nature of contextual evidence rarely renders such evidence inadmissible, as

long as it sets the stage for the jury's comprehension of the whole criminal transaction." *Swarb v. State,* 125 S.W.3d 672, 681 (Tex. App.—Houston [1st Dist.] 2003, pet. dism'd).

We hold that the evidence of extraneous bad acts presented in Zavala's written statements and DVD interrogation was admissible as contextual evidence of the crime charged. Disposal of Nicholas's body showed that Zavala was aware of Nicholas's death, with probative value in proving the charge of serious bodily injury. With no body presented for consideration in Zavala's trial, evidence of his role in disposing of the body was an important piece of the puzzle in proving Zavala's role in Nicholas's injuries and death. The court did not abuse its discretion in admitting the statements and DVD into evidence and denying Zavala's motion for a new trial. Zavala's fourth and fifth issues are overruled.

## VOIR DIRE OF EXPERT

In his final issue, Zavala argues that trial court erred when it denied his motion for new trial, because he was denied the right to fully *voir dire* the State's medical expert outside the presence of the jury. The State called Dr. Nancy Kellogg as a medical expert witness. During trial and outside the presence of the jury, the trial court held a hearing on Zavala's motion to suppress Dr. Kellogg's testimony. During that hearing, Dr. Kellogg testified about her opinion regarding Nicholas's injuries. Dr. Kellogg was also asked, and answered, questions by Zavala about the basis of her opinions. Zavala claims this did not constitute a full *voir dire* of the witness.

Rule 705(b) provides in pertinent part,

> **Voir dire.** Prior to the expert giving the expert's opinion or disclosing the underlying facts or data, a party against whom the opinion is offered upon request in a criminal case shall, or in a civil case may, be permitted to conduct a *voir dire* examination directed to the underlying facts or data upon which the opinion is based.

This examination shall be conducted out of the hearing of the jury.

TEX. R. EVID. 705(b). A defendant is undeniably entitled, upon timely request, to conduct *voir dire* examination directed to the underlying facts or data upon which the opinion of the State expert is based. *Alba v. State*, 905 S.W.2d 581, 587-88. The focus of the rule is to prevent the jury from hearing the underlying facts and data which might ultimately be ruled as inadmissible. *Id.* When a trial court has denied a proper request for *voir dire*, the appellate court must determine whether the error is so harmful as to require reversal. *Goss v. State*, 826 S.W.2d 162, 168 (Tex. Crim. App. 1992).

The record reveals that Zavala had ample opportunity to *voir dire* Dr. Kellogg. Zavala thoroughly questioned Dr. Kellogg regarding her background, experience, and basis for forming her opinions regarding Nicholas's injuries. Although the *voir dire* was conducted at the same time as the motion to suppress, the questions posed by Zavala were clearly aimed at determining Dr. Kellogg's qualifications, and both Zavala and the trial court referred to the fact that they were conducting *voir dire* at that time. In addition, the trial court noted at least twice during the questioning that the focus should be on why Dr. Kellogg's medical opinion should be admissible, and whether she was qualified to testify before the jury. At the end of questioning, when Zavala argued that he still needed to voir dire Dr. Kellogg, the trial court noted that Zavala had already had an opportunity to do so, stating "She was taken on *voir dire* and I believe that your request has been met." We note that Zavala never indicated what additional questioning he would have propounded had he been permitted to engage in additional *voir dire*. Because Zavala was properly allowed to conduct *voir dire* examination, the court did not err in denying Zavala's motion for a new trial. Zavala's sixth issue is overruled.

## CONCLUSION

The trial court did not abuse its discretion in admitting Zavala's DVD statement after Zavala asked if his statement would be "off the record," determining that the DVD statement was more probative than prejudicial, and deciding the written and DVD statements were admissible despite the inclusion of extraneous bad acts. In addition, the trial court gave Zavala the proper opportunity to *voir dire* the State's medical witness. Accordingly, the trial court's judgment is affirmed.


Catherine Stone, Justice

Do not publish