

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-12-00840-CR

Fernando Lerma **TREVINO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 218th Judicial District Court, Atascosa County, Texas
Trial Court No. 08-03-0110-CRA
Honorable Fred Shannon, Judge Presiding

Opinion by:   Rebeca C. Martinez, Justice

Sitting:       Marialyn Barnard, Justice
               Rebeca C. Martinez, Justice
               Patricia O. Alvarez, Justice

Delivered and Filed:  July 16, 2014

AFFIRMED

Fernando Lerma Trevino appeals his conviction of aggravated sexual assault of a child, arguing the trial court committed reversible error by denying him the mandatory right to voir dire the State's expert witness under Rule 705(b) of the Texas Rules of Evidence prior to her testimony. Because the error did not affect Trevino's substantial rights and was thus harmless, we affirm the judgment of the trial court.

ANALYSIS

In his sole issue on appeal, Trevino argues the trial court erred by denying his request under Rule 705(b) to voir dire the State's expert witness, Dr. Nancy Kellogg, as to the reliability of her opinion that the complainant was sexually abused. TEX. R. EVID. 705(b). Under Rule 705(b), a criminal defendant is entitled, upon a timely request, to conduct a voir dire examination directed to the underlying facts or data upon which the opinion of an expert witness is based. *Id.*; *Alba v. State*, 905 S.W.2d 581, 587 (Tex. Crim. App. 1995). The rule indicates that the trial court must allow this examination to be conducted outside the hearing of the jury and prior to the expert testifying to her opinion before the jury. *Id.* at 587-88. The purpose of Rule 705(b) is to give defense counsel the "opportunity to determine the foundation of the expert's opinion without fear of eliciting damaging hearsay or other inadmissible evidence in the jury's presence." *Alba*, 905 S.W.2d at 588 (citing *Goss v. State*, 826 S.W.2d 162, 168 (Tex. Crim. App. 1992)). The voir dire hearing may also allow the defendant to develop an objection that the expert's testimony lacks a sufficient basis for admissibility. *Id.*; *see* TEX. R. EVID. 705(c) (opinion is inadmissible if trial court determines underlying facts or data do not provide sufficient basis for opinion under Rule 702 or 703). Because Rule 705(b) is mandatory in a criminal case, the trial court errs if it denies a defendant's timely and proper request for a Rule 705(b) hearing. *Alba*, 905 S.W.2d at 588.

Here, the record demonstrates that Trevino timely requested a Rule 705(b) hearing to examine Dr. Kellogg on the underlying facts and data of her opinion. Trevino notified the trial court prior to trial of his desire to conduct a *Daubert* hearing on the scientific basis for Dr. Kellogg's testimony, repeated his request to voir dire Dr. Kellogg before she began testifying in order to determine "if there's any underlying scientific data and principles pursuant to Rule 7.02, 7.03, 7.04 and 7.05 [sic]," and re-urged his motion for a *Daubert* hearing before Dr. Kellogg stated her diagnosis. Based upon the trial court's assessment of the three-day period available to try the

case, the court decided there was not time for a voir dire hearing on the two State's experts, Dr. Kellogg and Dr. Morris. Instead, the trial judge stated he would listen to the expert testimony as it was presented to the jury and would rule on any defense objections and determine the admissibility of the evidence as the need arose. Should any inadmissible evidence be elicited, the judge stated he would instruct the jury to disregard the evidence, or if he believed it was of such a nature that they could not, he would grant a new trial. Trevino moved to exclude Dr. Kellogg's testimony based on the denial of a *Daubert* hearing; the court took that motion under advisement pending hearing the expert testimony.

The record clearly shows that Trevino made a proper request for a 705(b) hearing regarding the underlying facts and data used by Dr. Kellogg in developing her expert opinion testimony. Therefore, the trial court erred in refusing to allow Trevino to conduct a voir dire examination under Rule 705(b). *Id.*; *Harris v. State*, 133 S.W.3d 760, 773 (Tex. App.—Texarkana 2004, pet. ref'd) (noting that rule is mandatory in criminal cases).

Having determined that the trial court erred in denying Trevino's voir dire request, we must determine whether the error was "so harmful as to require reversal." *Goss*, 826 S.W.2d at 168. Because the error is not constitutional, we will only reverse if it affected Trevino's substantial rights; otherwise, the error must be disregarded. TEX. R. APP. P. 44.2(b); TEX. R. EVID. 103(a). In making this determination, we consider the entire record to decide whether the error had a substantial or injurious effect on the verdict of guilt. *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). Where the reviewing court has fair assurance that the error did not influence the jury or had but a slight effect, the conviction will stand. *Id.*; *McDonald v. State*, 179 S.W.3d 571, 578 (Tex. Crim. App. 2005).

Trevino argues the denial of a Rule 705(b) hearing harmed his substantial rights because it resulted in the admission of Dr. Kellogg's testimony which failed to meet the *Kelly* test for

reliability and admissibility of scientific evidence. *See Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992) (for novel scientific evidence to be admissible, proponent must show reliability by showing it is (1) based on a valid underlying theory, (2) a valid technique was used to apply the theory, and (3) the technique was properly applied on the occasion in question); *see also* TEX. R. EVID. 702.

Dr. Kellogg testified that she interviewed the complainant and took his medical history, but did not personally perform his physical examination, the results of which were normal. Dr. Kellogg was permitted to testify over Trevino's objection that 95% of male physical examinations are normal in sexual assault cases with young male victims. She further testified about the reasons for delayed outcry by child sexual assault victims. Finally, Dr. Kellogg stated that, based on the child's emotions, physical symptoms, and description of the abuse, she diagnosed the child as a victim of sexual abuse. On cross-examination, defense counsel indicated he had reviewed some of Dr. Kellogg's records prior to trial. Counsel questioned Dr. Kellogg at length about her testimony that 95% of male physical exams are normal. Dr. Kellogg conceded that the figure was not based on a peer-reviewed formal study or her own isolated study of male sexual assault victims. Rather, the figure was based on her experience in conducting between 8,000 and 9,000 child sexual assault examinations through her years of medical practice. Dr. Kellogg stated that she periodically reviews the last 100 cases and mentally calculates how many had normal exams and the figure has been about 95%. Dr. Kellogg admitted that she does not tabulate the percentage in a formal way; it is an estimate based on her personal experience. Defense counsel also asked Dr. Kellogg several questions comparing her testimony in the instant case to her testimony in other child sexual assault cases going back to the late 1980's.

Trevino argues that Dr. Kellogg's admission that her testimony that 95% of male sexual assault exams are normal is based on an estimate shows it was not founded on a valid scientific

theory, technique, or method as required by *Kelly*. Trevino asserts admission of Dr. Kellogg's opinion that the child was sexually abused was harmful because it bolstered the only other evidence of the offense—the child complainant's outcry and testimony that Trevino sexually abused him seven years ago. He notes that the courts have recognized that juries attach special significance to expert opinions, and that the State emphasized Dr. Kellogg's opinion that the child was sexually abused in its closing argument.

The State responds that Trevino was not harmed by the trial court's decision to "run the voir dire of the expert witness contemporaneously with her testimony at trial" because the trial court complied with its role as gatekeeper by assessing the admissibility of the expert testimony as each objection arose during trial. The State points out that on each occasion the trial court overruled Trevino's objection and determined that Dr. Kellogg's testimony was admissible. The State also cites to the trial court's statements on the record at the motion for new trial hearing that it found all the challenged expert testimony admissible during trial. The State argues that, even if the trial court did not technically comply by holding a separate voir dire hearing prior to the expert testimony, it functionally complied with Rule 705(b) and Trevino was not harmed because a hearing outside the jury's presence would not have altered the court's rulings admitting the challenged expert testimony. The State further points out that defense counsel performed a thorough cross-examination of Dr. Kellogg, challenging the bases for her opinions and the methods used, and revealing "possible contradictions" with her expert testimony in other cases and published studies.

We agree that the failure to hold a Rule 705(b) hearing on Dr. Kellogg's testimony did not affect Trevino's substantial rights. Defense counsel indicated his knowledge prior to trial that Dr. Kellogg would testify about normal physical exam findings in child sexual abuse cases and that her informal studies were based on female victims and not isolated to male victims. *See Brown v.*

*State*, 974 S.W.2d 289, 292 (Tex. App.—San Antonio 1998, pet. ref'd) (noting that if defense counsel already knew the basis of the expert's opinion testimony there was no need for a Rule 705(b) hearing). Trevino has not shown what facts or data underlying Dr. Kellogg's opinions his counsel could have learned from the voir dire examination that he did not already know. Further, Trevino does not claim that denial of the voir dire hearing hindered his defense counsel in his cross-examination of Dr. Kellogg; indeed, as the State points out, the record shows that defense counsel thoroughly cross-examined Dr. Kellogg about the facts and data underlying her opinions.

Further, at the motion for new trial hearing, Trevino's counsel stated on the record that, "based on my prior involvement in the cases with the State I knew the nature of Dr. Kellogg's testimony based on the reports she had given in this particular case." The sole focus of Trevino's complaint at the motion for new trial hearing was that his counsel had not received the records for a different expert witness, pediatric pulmonologist Dr. Morris, and was denied the opportunity to voir dire Dr. Morris before she testified; he argued her testimony indicating that the child's asthma was a psychosomatic symptom stemming from the sexual abuse was inadmissible because she had no underlying data to support it. In discussing whether any harm resulted from not conducting a voir dire, the trial court stated its recollection that the underlying facts and data were previously disclosed to the defense in *both* experts' reports and explained its understanding that "[w]here that information has already been given to defense counsel, then it would just be a waste of time to have a 7.05 [sic] hearing." The trial judge further indicated that, if he had heard the expert testimony outside the jury's presence, he still would not have excluded any of the testimony.

Based on the record before us, we cannot say that the denial of Trevino's request for a Rule 705(b) hearing before Dr. Kellogg testified affected his substantial rights; therefore, the error was

harmless.  TEX. R. APP. P. 44.2(b).  We overrule his sole issue on appeal and affirm the trial court's judgment.

Rebeca C. Martinez, Justice

DO NOT PUBLISH